# SETTLEMENT AGREEMENT

This Settlement Agreement is entered into between the Settlement Class defined in Paragraph 5, below, Disability Rights Florida, and Sheriff of Broward County, Florida:

## I. INTRODUCTION

1. On June 5, 2020, Plaintiffs, for themselves and proposed class members confined at the Broward County Jail, filed a complaint and writ of habeas corpus alleging that the fact and conditions of their confinement violated their rights under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, and the Rehabilitation Act. They sued the Sheriff of Broward County, Florida in his official capacity, seeking remedies to address alleged substantial risks of their contracting the COVID-19 virus, and of suffering serious illness or death should they contract the virus. Plaintiffs contend that Defendant must implement the remedial measures set forth in this Agreement in order to address the ongoing risk from COVID-19 transmission and infection at the Broward County Jail.

2. Defendant asserts that prior to Plaintiffs' June 5, 2020 filing of the complaint, the Sheriff, his staff, and contracted staff at the Broward County Jail implemented most of the remedial measures Plaintiffs are demanding; that Defendant's COVID protocols at the Broward County Jail were and remain compliant with the Eighth and Fourteenth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act; and, that Defendant will continue to implement the remedial measures addressed in this Agreement. Defendant is entering into this Agreement solely to avoid the cost, expense, and uncertainty of litigation and neither this Agreement, nor any action taken by Defendant pursuant to it, shall in any way be construed as an admission by Defendant of any liability, wrongdoing, or violation of law, regulation, contract or policy in any claim, action, or lawsuit against Defendant.

3. The parties have reached this Agreement after arms-length negotiations. The

purpose of this Agreement is to address the risk from COVID-19 infection at the Broward County Jail consistent with public health principles. The Class, Disability Rights Florida, and Sheriff stipulate that this agreement is fair, reasonable, and adequate to protect their interests. The parties further stipulate, and jointly request that the Court find, that this Agreement complies in all respects with the Prison Litigation Reform Act, 18 U.S.C. § 3626(a), and that the Court has the authority and sufficient record to enter and approve this Agreement.

## II.  PRELIMINARY AND FINAL APPROVAL OF SETTLEMENT

4. The settling parties shall jointly submit this Settlement Agreement to the Court for Preliminary Approval along with a proposed order for Preliminary Approval providing a schedule for notice, proposed notices (in English, Creole, and Spanish) of Preliminary Approval, objection period, and fairness hearing, and proposed notice of the final remedy for posting upon Final Approval under Rule 23(e) of the Federal Rules of Civil Procedure.

5. Defendant will not oppose a motion filed by Plaintiffs for certification of a Settlement Class for purposes of settlement ("Settlement Class") of persons who are being, or will be, confined in the Broward County Jail at any time while the Agreement remains in effect, including any facilities where the Defendant may in the future confine persons. The Settlement Class includes but is not limited to persons who are Medically Vulnerable as defined in this Agreement. Should the class not be certified, then this Agreement shall not take effect.

6. Pending approval of the Agreement, the parties shall comply with its terms.

## III.  DEFINITIONS

7. "Settlement Class," "Plaintiffs," "detainees," "patients" and "prisoners" shall mean all persons who are Florida residents who are being, or will be confined in the Broward County Jail, including any facilities where the Defendant may in the future confine persons.

8. "Sheriff" and "Defendant" shall mean the Office of the Broward County Sheriff,

Gregory Tony, as Sheriff of Broward County, Florida, and any and all of his predecessors or successors in office, and any and all of his deputies, appointees, employees, and contracted entities or staff, who work at the Broward County Jail, or otherwise provide services to the Class.

9. "Settling parties" shall mean the Settlement Class, Disability Rights Florida, and Sheriff.

10. "Jail" shall mean the Broward County corrections facilities, including any facilities where the Defendant may in the future confine the Class.

11. "Directive" shall mean any policy, post order, bulletin, form, order, instructions, or other document setting forth operational standards, the responsibilities of staff, and/or the rights of prisoners.

12. "Cohorting" is the practice of housing together in a unit for a set time a defined group of prisoners in a non-punitive setting.

13. "Quarantine" is the practice of confining together in a unit individuals in a non-punitive setting who have had close contact with the same person or persons who are suspected or known to be COVID-19 infected.

14. "Medical isolation" refers to the isolation of persons with known or suspected COVID-19 infection in a non-punitive setting consistent with CDC Guidance for purposes of testing, symptoms screening, and/or medical monitoring.

15. "Medical monitoring" refers to a clinical assessment of a patient with known or suspected COVID-19 infection to determine the patient's condition so as to initiate more assertive care if clinically indicated.

16. "Sick Call" means a request for or encounter regarding health care services by members of the Class.

17. To "implement" means: a written directive has been drafted and disseminated to all staff responsible for following or applying the directive; all relevant staff have acknowledged receipt of the directive; compliance with the directive is monitored; the directive is consistently applied; and, there are corrective action measures to address lapses in application of the directive.

### IV. COVENANTS OF THE SETTLING PARTIES

18. Defendant shall maintain sufficient records to document that the requirements of Section V of this Agreement are being properly implemented and shall make such records available to Plaintiffs either while on site or promptly in response to requests for off-site production. Should Defendant determine it is necessary to revise any directives related to the substantive terms of this Agreement, Defendant shall provide such revisions to Plaintiffs for comment before implementation, unless such revisions require immediate implementation to protect the health and safety of prisoners or staff and in such case Defendant shall provide Plaintiffs with such revisions within 24 hours after implementation; however, nothing herein requires Defendant to adopt any recommendations for changes to such revisions proposed by Plaintiffs. Except as provided herein, all final revised directives shall be produced to Plaintiffs within 72 hours after implementation.

19. Plaintiffs and their retained experts are entitled to conduct reasonable monitoring of the Jail's compliance with this Agreement including the right to inspect the Jail, interview staff and Settlement Class members, request and receive documents and information while off-site, review and receive copies of relevant records, and observe practices related to compliance with the provisions of this Agreement. When inspecting the Jail, Plaintiffs and any experts retained shall have the right to utilize any necessary equipment, excluding any recording equipment, with prior notice to and approval of Defendant. Such approval shall not be withheld absent reasons

reasonably related to the security of the facilities.  If recording equipment is requested by Plaintiffs and is approved by Defendant, such recording equipment will be provided by, and remain in possession of, Defendant who will utilize it at the direction of Plaintiffs.  All recorded images from inside the jail shall be subject to review by Defendant, who has the right to object on security grounds to the introduction of any such images into the public record, and may provide Plaintiffs with redacted images of such recordings.  The Court shall resolve by motion all objections related to either Plaintiffs' request to utilize equipment, to its use after approval, or related to any images, should the parties be unable to do so.

20. Failure by either party to enforce this Agreement, if entered, or any provision with respect to any deadline or any other provision shall not be construed as a waiver of its right to enforce these or other deadlines or provisions of the Agreement.

21. If any circumstance occurs that causes an inability to timely carry out any requirements of the Agreement, the Sheriff shall notify Plaintiffs' Counsel in writing within three (3) calendar days after the Sheriff becomes aware of the circumstance and its impact on the Sheriff's ability to perform under the Agreement. The notice shall describe the cause of the inability to perform and the measures taken to prevent or minimize the inability and to remediate its impact.  Defendant shall implement all reasonable measures to avoid or minimize any such inability and to remediate its impact. Nothing in this paragraph shall affect Plaintiffs' ability to enforce this Agreement.

22. The Agreement shall be applicable to, and binding upon, all settling parties, and their respective officers, agents, employees, contractors, assigns, and their successors in office.

23. In the event any provision of this Agreement is declared invalid for any reason by a court of competent jurisdiction, that finding shall not affect the remaining provisions of this

Agreement.

24. Should a dispute arise over Defendant's compliance with any terms of this Agreement or over substantial compliance with the Agreement itself, Plaintiffs shall first notify Defendant, in writing, of the claimed non-compliance and the parties shall confer in an effort to resolve their dispute before seeking relief from the Court.  If the parties are unable to resolve their dispute within seven (7) days of the Plaintiffs' written notice, the dispute is at impasse and either may seek relief from the Court by proper motion. Any motion addressing compliance or substantial compliance must be filed no later than fourteen (14) days after the impasse, absent an agreement or order to extend the filing period. Should a party file a motion for enforcement, contempt, modification, cancellation, or rescission of the Agreement, the Court shall set the matter for an evidentiary hearing, entering an appropriate scheduling order setting discovery deadlines for the hearing, unless otherwise agreed to by the parties.   Plaintiffs shall file any motion pursuant to this paragraph no less than thirty (30)  days before the 15-month term of this Agreement expires per paragraph 25, below.

25. This Agreement shall expire in its entirety upon the earliest of:

A. Twelve (12) months from the date of final approval of the Agreement if the COVID-19 emergency orders ("Emergency Orders") for both the State of Florida and Broward County have been lifted as of that date;

B. Subsequent to twelve (12) months from the date of final approval of the Agreement, but before fifteen (15) months from the date of final approval of the Agreement on any date when the Emergency Orders are lifted; or

C. Fifteen (15) months from the date of final approval of the Agreement.

Should any motion timely filed under paragraph 24, above, be pending and unresolved by

the Court at the time of occurrence of an event specified in subsection A, B, or C, above, this Agreement shall not expire until such time as the Court resolves the motion.

Any motion filed under paragraph 24, above, subsequent to the occurrence of an event specified in subsection A, B, or C, above, shall be untimely and the Court shall deny any such motion on that basis.

26.     With respect to any motion filed under paragraph 24, above, the Court shall not extend the term of this Agreement if Defendant is in substantial compliance.  "Substantial compliance" means the Defendant's consistent compliance with all material provisions of this Agreement throughout the time the Agreement remains in effect and does not require 100% compliance.  Sporadic and isolated deviations from the requirements of this Agreement shall not constitute a failure of substantial compliance, provided that the Sheriff demonstrates that the Jail has (a) implemented a reliable system for tracking compliance and for taking appropriate corrective measures in response to instances of non-compliance, and (b) that the Sheriff has instituted policies, procedures, practices, and resources that are capable of durable and sustained compliance beyond the termination of this Agreement.

27.     The Court shall retain jurisdiction to enforce the terms of this Settlement Agreement until the Agreement expires or entry of a Final Order under the terms of Paragraph 24, above.

28.     Following expiration of the Agreement and/or entry of a Final Order pursuant to paragraph 24, above, the Court shall retain jurisdiction for the limited purpose of determining the parties' entitlement to and amount of any award of attorney's fees and litigation costs, to the extent not previously determined or otherwise resolved by agreement of the parties.

29. The Agreement resolves all claims asserted within this litigation.

## V. SUBSTANTIVE TERMS

**Caveat:** Below, this Agreement sets forth the substantive protocols and procedures the parties have agreed the Sheriff will continue to implement and comply with upon the effective date of this Agreement. It is the Sheriff's desire that this Agreement also specifically identify the protocols and procedures the Sheriff was performing prior to the litigation and prior to any settlement negotiation. Plaintiffs agree to allow the Sheriff to make that identification via "Sheriff's statements," below; however, Plaintiffs have not verified the Sheriff's statements via discovery or other means. Plaintiffs therefore do not intend the inclusion of the Sheriff's statements as any form of admission or acknowledgment by the Plaintiffs that the Sheriff's statements are factually accurate. The parties agree that the inclusion of the Sheriff's statements shall not be construed as Plaintiffs' admission to, acknowledgement of, or agreement with the Sheriff's statements.

30. Defendant shall continue to implement and comply with the following:

**ADMISSIONS:**

31. Conduct temperature and COVID-19 symptom checks consistent with CDC guidance at intake/booking.

Sheriff's statement: The Sheriff was performing this procedure prior to the litigation.

32. Maintain social distancing of at least six feet in intake holding cells and other areas where newly admitted persons are held before their transfer to Jail facilities where possible. Defendant shall document all instances where prisoners were not kept at least six feet apart, providing the reason for why they were not kept at a distance of six feet, and timely report to Plaintiffs on these instances. Newly admitted prisoners shall be provided face coverings before entering the booking area. No one shall spend

more than six (6) hours in the booking area. Staff shall wear face coverings and gloves in the booking area while within six feet of prisoners. The term "face coverings" as used in this Agreement shall mean a covering made of cloth covering the nose and mouth that is capable of being sanitized on a regular basis; and, surgical, KN95, and N95 masks that are utilized and replaced on a regular basis and per manufacturers' instructions.

<u>Sheriff's statement</u>:   The Sheriff was performing this procedure prior to the litigation.

33. Prominently display in all prisoner housing units, the booking area, and other common areas in an accessible format information on COVID-19 infection (including symptoms, transmission), measures to prevent infection (e.g., frequent hand washing with soap and water or use of hand sanitizer, avoid touching face/eyes, coughing into elbow, wearing face coverings, and social distancing), importance of reporting symptoms, purpose and methods for quarantine and medical isolation.

<u>Sheriff's statement</u>:   The Sheriff was performing this procedure prior to the litigation.

**HOUSING & SOCIAL DISTANCING**

34. Identify all persons who are vulnerable to serious illness or death because of COVID-19 infection, including all medically vulnerable persons.

<u>Sheriff's statement</u>:   The Sheriff has instituted this procedure as a result of negotiation with the Plaintiffs.

35. House medically vulnerable persons so they can maintain social distancing of at least six feet from others when possible; be housed in a non-punitive setting in single cells, or, at a minimum, not in cells with other prisoners whose COVID-19 status is unknown or with those who have pending tests or who are symptomatic. Defendant

9

shall document all instances where medically vulnerable persons are housed in conditions that did not allow them to maintain a distance of six feet, providing the reason for why they were not kept in conditions that allowed them to be housed six feet apart, and timely report to Plaintiffs on those instances.

<u>Sheriff's statement</u>:   The Sheriff had determined to implement this procedure prior to the lawsuit and was proceeding in that regard at the time Plaintiffs filed the litigation. The Sheriff completed implementation after Plaintiffs filed the litigation.

36. Implement a housing plan that would allow, where possible, prisoners to maintain six-feet of social distance from others while in their cells (including implementation of head-to-foot sleeping) and common areas, including day-rooms, dining-areas, recreation-areas, and bath and shower rooms. Defendant shall document all instances where prisoners could not maintain a distance of six feet due to a lack of available bed space, providing the reason for a lack of bed space, and timely report to Plaintiffs on those instances.

<u>Sheriff's statement</u>:   The Sheriff has instituted this procedure as a result of negotiation with the Plaintiffs.

37. Lay out tape markers at six-foot increments in areas where persons are required to line up or congregate for medications, security searches of cells and housing units, recreation, and food service.

<u>Sheriff's statement</u>:   The Sheriff had determined to implement this procedure prior to the lawsuit and was proceeding in that regard at the time Plaintiffs filed the litigation. The Sheriff completed implementation after Plaintiffs filed the litigation.

38. House persons who test positive for COVID-19 in medical isolation in individual cells in separate housing units, not in cells or on tiers with non-positive, test-pending, or symptomatic persons.

Sheriff's statement:   The Sheriff was performing this procedure prior to the litigation.

39. House symptomatic persons in medical isolation in individual cells in separate housing units, not in cells or on tiers with positive or other symptomatic persons.

Sheriff's statement:   The Sheriff was performing this procedure prior to the litigation.

40. Restrict transfers of prisoners from other jurisdictions, unless (1) those persons have pending criminal charges in Broward County, and the Florida Supreme Court lifts the standing order restricting inter-jurisdiction transfers or the jail is otherwise compelled by law to receive the prisoner into custody; or (2) the prisoner is a federal detainee whom the Jail must accept by law or by pre-existing agreement with the United States government.

Sheriff's statement:   The Sheriff was performing this procedure prior to the litigation.

41. Restrict transfers of prisoners within the facilities except as necessary for medical evaluation, quarantine or medical isolation, clinical care, extenuating security concerns, release, or to prevent overcrowding.  Where transfer is necessary, perform symptom screening and temperature check consistent with CDC recommendations prior to person's transfer. Sending and receiving facilities shall communicate the COVID status – i.e., positive viral test, negative viral test, close contact of someone COVID-positive or suspected of infection – of any persons transferred between facilities before their transfer, and shall ensure that the transfers and prisoner movement are consistent with CDC Guidance.

<u>Sheriff's statement</u>:     The Sheriff was performing this procedure prior to the litigation.

42.  Implement lawful alternatives to in-person court appearances where permissible.

<u>Sheriff's statement</u>:     The Sheriff was performing this procedure prior to the litigation.

## SCREENING, TESTING & CONTACT TRACING

43. Test all of the following for COVID-19 infection: (1) prisoners and staff who display symptoms; (2) prisoners who are exposed to a person who has tested positive for COVID-19; and, (3) prisoners who are medically vulnerable persons and who have been incarcerated for a minimum of 72 hours, except where such person meets the criteria for testing in 43(1) or 43(2), above. Medically vulnerable persons is defined as persons 65 years of age and over, persons who are both age 50 and over and who are hypertensive, and persons of any age who suffer from certain underlying medical conditions which the Centers for Disease Control and Prevention has determined are at an increased risk of severe illness from COVID-19.

<u>Sheriff's statement</u>:     The Sheriff was testing prisoners and staff who displayed symptoms and prisoners who had been exposed to a person who had tested positive for COVID-19 prior to the litigation.  The Sheriff has instituted the remainder of this procedure as a result of negotiation with the Plaintiffs.

44. During the life of this Agreement, Defendant shall report to Plaintiffs on efforts made to expand testing to all prisoners and staff at the Jail, and shall comply with CDC Guidance for correctional and detention facilities that expand testing beyond that provided in this Agreement. The parties shall confer regularly as to whether expanded or universal testing should be implemented.  These efforts shall include ongoing communications with local and state health officials to secure any testing supplies,

equipment and personnel necessary to provide expanded or universal testing consistent with public health guidelines

Sheriff's statement:    The Sheriff was testing in compliance with CDC guidelines prior to the litigation.  The Sheriff has instituted the remainder of this procedure and has expanded testing as a result of negotiation with the Plaintiffs.

45. Identify persons who came into contact with others (staff or prisoners) who test positive or are symptomatic and apply clinically appropriate cohorting, quarantining, and medical isolation procedures.

Sheriff's statement:    The Sheriff was performing this procedure prior to the litigation.

46. Clinically monitor persons who are quarantined or medically isolated for known or suspect exposure to COVID-19, including conducting twice-daily temperature checks, symptom screening, and pulse-oxygenation testing.

Sheriff's statement:    The Sheriff was performing this procedure prior to the litigation.

47. Defendants shall offer at no cost vaccinations for seasonal influenza ("flu shots") to all prisoners to the extent Defendant's medical vendor is able to procure such vaccinations. Defendant and the medical vendor shall make their best efforts to procure sufficient vaccinations for all prisoners, and shall notify Plaintiffs if they are unable to do so, and document their efforts.

Sheriff's statement:    The Sheriff was performing this procedure prior to the litigation.

## QUARANTINING, COHORTING, MEDICAL ISOLATION, & MEDICAL CARE

48. Implement CDC-compliant cohorting, quarantining, and medical isolation procedures for those who test positive, who are symptomatic, or those who have come into close contact with such persons, including Jail staff.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

49. Cohort newly-admitted persons for 14 days in separate housing units, and monitor them on a daily basis for COVID-19 infection before they are transferred to units in other Jail facilities, except for prisoners who require mental health or medical services necessitating their being moved to the infirmary, where they will thereafter be cohorted for 14 days.  Those who are a high escape risk or pose a security threat such that administrative segregation is necessary will be single celled in a unit consistent with their security and classification status.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

50. Do not cohort medically vulnerable infected persons with other infected individuals. If cohorting such individuals is unavoidable, make all feasible accommodations to prevent transmission of other infectious diseases to the higher-risk individual.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

51. Waive all co-payments for sick calls for any individual reporting COVID-19 related symptoms, such as fever, cough, diarrhea, aches, or breathing difficulties.  All routine medical appointments shall include CDC compliant COVID-19 symptom screening and temperature checks

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

## PPE, CLEANING AND DISINFECTING PROCEDURES. AND PERSONAL HYGIENE SUPPLIES

52. Provide prisoners with two face coverings that can be used as well as sanitized or replaced per manufacturers' instructions.

<u>Sheriff's statement</u>:   The Sheriff has instituted this procedure as a result of negotiation with the Plaintiffs. The Sheriff currently provides one (1) face covering to prisoners and replaces same weekly or as needed.

53. Provide clear instructions to prisoners on the proper use of face coverings, including sanitation procedures and supplies for cloth masks, and instructions on proper donning, doffing, and disposal of PPE; and compliance with applicable CDC Guidelines.

<u>Sheriff's statement</u>:   The Sheriff was performing this procedure prior to the litigation.

54. Provide Jail staff with face coverings and other PPE and supplies appropriate to their duties in the Jail as recommended by CDC Guidance, including N95 respirators, surgical masks, protective eye-wear, gloves, and/or gowns/coveralls for those working in units with prisoners who have tested positive or who are symptomatic. Staff shall where possible restrict their movements between units such that they move from areas of low risk of exposure to areas of high risk of exposure, rather than vice versa, per CDC Guidelines.

<u>Sheriff's statement</u>:   The Sheriff was performing this procedure prior to the litigation.

55. Instruct and provide assistance on a regular basis and as needed to prisoners with physical, mental health, and developmental disabilities on the proper use and maintenance of face coverings, as appropriate.

<u>Sheriff's statement</u>:   The Sheriff was performing this procedure prior to the litigation.

56. Provide prisoners with sufficient CDC-compliant equipment and supplies to clean and disinfect their cells, dayrooms, and common areas and surfaces on a daily basis and throughout the day.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

57. Instruct prisoners with physical, mental health, and developmental disabilities on how to properly clean and disinfect their cells on a daily and as-needed basis.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

58. Instruct prisoners to clean and disinfect high-touch surfaces and common areas throughout the day and provide them with sufficient CDC-compliant cleaning and disinfecting equipment and supplies and protective gear.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

59. Provide cleaning and CDC-complaint disinfecting equipment and supplies such that showers and bathrooms may be cleaned after each use.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

60. Provide prisoners with unrestricted and free access, subject to appropriate supervision, to cleaning, disinfecting, and sanitation supplies, including:

    a. Disinfectant wipes or other disinfectant products for daily cleaning of cells and common areas, including day-rooms, dining-areas, and bath and shower rooms;

    b. Sanitation supplies to allow prisoners to wipe down utensils, cups, phones, video-modules, kiosks and other shared "high-touch" surfaces before and after each use;

    c. Clean water and CDC-compliant disinfectant for use in cleaning and disinfecting cells and common areas;

    d. Gloves and other protective gear for cleaning cells and common areas;

    e. Hand soap, with replacements upon request, or hand sanitizer with at least 60 percent alcohol; and

    f.  Disposable paper towels for drying hands.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

**EDUCATION & TRANSPARENCY**

61. Instruct prisoners on the latest CDC and other public health guidance on COVID-19, including best practices about preventing COVID-19 infection and transmission. This shall include instruction in a manner adequate for class members with low literacy or for whom English is not their primary language.

    a.  Plaintiffs who test positive and are admitted to special medical units shall be provided individual education by a health care professional.

<u>Sheriff's statement</u>:    The Sheriff was performing this procedure prior to the litigation.

62. Track and report upon statistics and other data concerning COVID-19 infection and transmission in the Jail, including:

    a.  Number of prisoners with confirmed COVID-19 infection (total cumulative);

    b.  Number of prisoners tested (weekly cumulative);

    c.  Number of positive and number of negative results received (weekly cumulative);

    d.  Number of Correction Staff with Confirmed COVID-19 positive (total cumulative);

    e.  Number of Jail Health Staff with Confirmed COVID-19 (total cumulative);

    f.  Total Population in Custody (snapshot);

    g.  Total New Admissions (weekly cumulative);

    h.  Total Pretrial (snapshot);

    i.  Total Sentenced (snapshot);

    j.   Total held on Technical Parole Violation (snapshot);

    k.   Total Aged Fifty (50) and Over (snapshot);

    l.   Total in Infirmary Status (Men's and Women's Infirmary) (snapshot);

    m.   Total Pregnant Women in Custody (snapshot);

    n.   Number in Quarantine Status; Exposed (snapshot);

    o.   Number of Persons Under Investigation (PUI) (snapshot);

    p.   Number COVID-19 in Cohorted Housing (snapshot);

    q.   Total Hospitalized that are COVID-19 related (snapshot);

    r.   Hospital Admissions that are COVID-19 related (weekly cumulative);

    s.   Hospital Discharges for COVID-19 admitted patients (weekly cumulative); and

    t.   Deaths that are COVID-19 related (Weekly Cumulative and Total Cumulative).

Sheriff's statement:   The Sheriff was performing this procedure prior to the litigation, except that the Sheriff was not reporting to the Plaintiffs.  Following commencement of the litigation, the Sheriff has reported the information to the Plaintiffs forthwith upon Plaintiffs' requests.

63. Report any failure of third party emergency response personnel to respond to medical emergencies at the jail facilities related to COVID-19 to the Broward County Department of Health.

Sheriff's statement:   The Sheriff had determined to implement this procedure prior to the lawsuit and was proceeding in that regard at the time Plaintiffs filed the litigation.  The Sheriff completed implementation after Plaintiffs filed the litigation.

**ADDITIONAL PROVISIONS**

64. If a medically vulnerable prisoner does not meet the criteria determined for their release, they shall be monitored for COVID-19 infection including twice-daily temperature checks and other preventative measures detailed in this Agreement.

<u>Sheriff's statement</u>:   The Sheriff has instituted this procedure as a result of negotiation with the Plaintiffs.

Agreed to this <u>24th</u> day of November, 2020.

Terrence Lynch, Esq.
Counsel for Defendant Gregory Tony
Office of the General Counsel for
the Broward County Sheriff
2601 West Broward Blvd.
Fort Lauderdale, FL 33312
Telephone: (954) 831-8921
Facsimile: (954) 321-5040
Terrence_Lynch@sheriff.org

By: _____
TERRENCE LYNCH

For Defendant

Benjamin Stevenson
Florida bar number 598909
ACLU Foundation of Florida
3 W. Garden St., Suite 712
Pensacola FL 3502-5636
Telephone: (786) 363-2738
bstevension@aclufl.org

By: _____ Nov. 23, 2020
BENJAMIN STEVENSON

NATIONAL PRISON PROJECT OF
   THE ACLU
915 15th Street, N.W., 7th fl.
Washington, D.C. 20005
Telephone (202) 393-4930
ebalaban@aclu.org

By: _____
ERIC BALABAN

For Plaintiffs

19