**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CODY BARNETT, et al.,

     *Plaintiffs/Petitioners*,                Case No. 0:20-cv-61113-WPD

     v.

GREGORY TONY,

     *Defendant/Respondent*.

_____/

**PLAINTIFFS' MOTION FOR APPROVAL OF CLASS SETTLEMENT**
**AND CERTIFICATION OF SETTLEMENT CLASS**
**AND INCORPORATED MEMORANDUM OF LAW**

**CONTENTS**

INTRODUCTION ..................................................................................................................1

  A.   Factual Background ..................................................................................................1

  B.   Procedural Background.............................................................................................2

  C.   Terms of the Settlement ..........................................................................................2

     1.   The Settlement Class ...................................................................................3

     2.   New Arrestees and Broward County Jail's Admissions Procedures ..........3

     3.   Housing and Social Distancing ...................................................................3

     4.   Screening, Testing, and Contact Tracing ...................................................4

     5.   Quarantining, Cohorting, Medical Isolation, and Medical Care.................4

     6.   Personal Protective Equipment, Cleaning and Disinfecting Procedures, and Personal Hygiene Supplies ...............................................................................5

     7.   Education and Transparency........................................................................5

     8.   Monitoring ..................................................................................................5

     9.   Expiration of Settlement .............................................................................6

ARGUMENT .......................................................................................................................6

  A.   Certification of the Settlement Class Is Appropriate .............................................6

     1.   Each of the Rule 23(a) Factors is Met ........................................................6

     2.   The Requirements of Rule 23(b)(2) Are Satisfied Here ..............................8

  B.   The Court-Approved Notice Satisfies Rule 23 and Due Process ...........................9

  C.   The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.............9

     1.   The Class Was Adequately Represented ..................................................10

     2.   The Settlement Is the Product of a Good-Faith, Informed, and Arm's-Length Negotiation.........................................................................................11

     3.   The Relief Is Adequate .............................................................................11

     4.   Class Members Are Treated Equitably Relative to Each Other.................17

  D.   The Settlement Complies with the Prison Litigation Reform Act.................18

  E.   The COVID-19 Virus Remains a Serious Threat and There Is a Continued Need for the Settlement ...................................................................................................18

CONCLUSION...................................................................................................................20

Plaintiffs[1], by and through their undersigned counsel ("Class Counsel"), respectfully move this Court for approval of the settlement reached in the above-captioned matter.[2]  For the reasons set forth below, the settlement is fair, reasonable, and adequate and serves the best interests of the proposed class members. Therefore, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs request that the Court issue an Order granting approval of the proposed class settlement (the "Settlement") and certifying the settlement class (the "Class" or "Class Members") defined in the Settlement.[3]

## INTRODUCTION

### A.  Factual Background

This litigation arises from conditions at the Broward County Jail facilities ("Broward County Jail") during the COVID-19 pandemic wreaking havoc worldwide.  Around the globe, millions of people have suffered or died from COVID-19.  As of May 3, 2021, in the state of Florida alone, over 2.2 million people have been infected with COVID-19 and over 35,200 people have died.[4]  In Broward County, 2,952 people have died from COVID-19, with new deaths occurring every day.[5]

Correctional facilities have proven to be particularly vulnerable to COVID-19 outbreaks because their congregate settings force people who are incarcerated into constant close contact with each other and prison staff, including corrections officers.[6]  The Broward County Jail is no

---

[1]     Plaintiffs are the individually named persons as well as organizational plaintiff Disability Rights Florida.

[2]     The Settlement is attached hereto as Exhibit 1.  Capitalized terms not defined herein shall have the same definitions and meanings ascribed to them in the Settlement.

[3]     A proposed Final Approval Order for the Settlement is attached hereto as Exhibit 2.

[4]     *Tracking Coronavirus in Florida:  Latest Map and Case Count*, N.Y. TIMES (updated May 3, 2021), https://www.nytimes.com/interactive/2021/us/florida-covid-cases.html.

[5]     *See* Cindy Krischer Goodman*, Florida Reports 5,306 New COVID Cases and 77 More Deaths* S. FLA. SUNSENTINEL (Apr. 30, 2021), https://www.sun-sentinel.com/coronavirus/fl-ne-florida-coronavirus-friday-april-30-20210430-2j2qacacqbb3hotx4ma7vry6sy-story.html.

[6]     Centers for Disease Control & Prevention, *For People Living in Prisons and Jails* (updated Mar.    5,    2021),    https://www.cdc.gov/coronavirus/2019-ncov/downloads/needs-extra-

exception.  Indeed, hundreds of detainees at the Broward County Jail have contracted COVID-19 since the beginning of the pandemic, and at least three have died.[7]

### B. Procedural Background

On June 5, 2020, Plaintiffs, for themselves and Class Members confined at the Broward County Jail, filed a complaint and habeas petition challenging the fact and conditions of their confinement.  (ECF No. 1.)  On June 25, 2020, Plaintiffs filed a motion for temporary restraining order and preliminary injunction ("TRO Motion"), supported by forty-four declarations from prisoners at the Broward County Jail describing pandemic conditions and by two expert declarations.  (ECF Nos. 17-18.)  Following extensive negotiations, Plaintiffs and Defendant Sheriff Gregory Tony ("Defendant") entered into a settlement agreement on November 30, 2020, and moved the Court for preliminary approval of the Settlement on December 15, 2020.  (ECF No. 49.)  On January 6, 2021, this Court granted preliminary approval of the Settlement, preliminary certification of the Class, and approval of the notice (the "Notice") to the Class.  (ECF No. 52.)  In that same Order, the Court ordered Plaintiffs to file their motion for final approval of the Settlement no later than May 3, 2021.  (*Id.*)  The Court scheduled a Final Approval Hearing for May 10, 2021. (*Id.*)

### C. Terms of the Settlement

The Settlement ensures that Defendant adopts adequate procedures both to protect Class Members from contracting COVID-19 and treat Class Members who become infected.  The terms of the Settlement are detailed in the Agreement, attached hereto as Exhibit 1.  The following is a summary of the material terms of the Settlement.

---

precautions/For-People-Living-in-Prisons-and-Jails.pdf ("Living in prisons and jails puts you at higher risk for getting COVID-19[.]").

[7]      Ex. 5, at 1-2 (Public Records Response - Email from Broward Cnty. Sheriff's Office to Anjana Samant (May 3, 2021, 5:16am EST) (noting the Broward County Jail has had 391 inmates test positive for COVID-19 and three inmates have died from COVID-19 to date)); *see also* Amanda Batchelor & Ian Margol, *Inmate Diagnosed with Coronavirus Had Emergency Motion Filed for Release Prior to his Death*, LOCAL10 (Apr. 9, 2020), https://cutt.ly/jyV1Oi4; Wayne K. Roustan, *Broward Jail Inmate Died of COVID-19, Medical Examiner Says*, SUN SENTINEL (Nov. 21, 2020), https://www.sun-sentinel.com/local/broward/fort-lauderdale/fl-ne-covid-inmate-death-20201121-2p333b44cjhilhv56mnmgqrfmi-story.html.

1.   The Settlement Class

The Settlement Class is defined as "persons who are being, or will be, confined in the Broward County Jail at any time while the Agreement remains in effect, including any facilities where the Defendant may in the future confine persons." The Settlement Class includes persons who are "Medically Vulnerable," defined as "persons 65 years of age and over, persons who are both age 50 and over and who are hypertensive, and persons of any age who suffer from certain underlying medical conditions which the CDC has determined are at an increased risk of severe illness from COVID-19."[8]

2.   New Arrestees and Broward County Jail's Admissions Procedures

The Settlement requires Defendant to (i) conduct temperature and COVID-19 symptom checks consistent with CDC guidance at intake/booking; (ii) ensure social distancing of at least six feet in intake holding cells and other areas where newly admitted persons are held before their transfer to Jail facilities, where possible; (iii) provide face coverings to newly admitted prisoners before entering the booking area; (iv) keep new arrestees in the booking area for no longer than six hours; and (iv) mandate use of face coverings and gloves by staff in the booking area while within six feet of prisoners.

3.   Housing and Social Distancing

The Settlement requires Defendant to (i) identify all persons who are vulnerable to serious illness or death from COVID-19 infection, including all Medically Vulnerable persons; (ii) house all Medically Vulnerable persons so they can maintain social distancing of at least six feet from others when possible and in a non-punitive setting in single cells, or, at minimum, not in cells with other prisoners whose COVID-19 status is unknown or with those who have pending tests or who

---

[8]     The Centers for Disease Control and Prevention has determined that persons who suffer from following underlying medical conditions are at an increased risk of severe illness from COVID-19:  (a) cancer, (b) chronic kidney disease, (c) chronic lung diseases, (d) dementia or other neurological conditions, (e) diabetes, (f) down syndrome, (g) heart conditions, (h) HIV, (i) immunocompromised state (weakened immune system), (j) liver disease (k) obesity, (l) pregnancy (m) sickle cell disease, (n) smoking, (o) solid organ or blood stem cell transplant, (p) stroke or cerebrovascular disease, and (q) substance use disorders.  Centers for Disease Control & Prevention, *People with Certain Medical Conditions* (updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.f

are symptomatic; (iii) develop a housing plan that would allow, where possible, prisoners to maintain six feet of social distance from others while in their cells (including implementation of head-to-foot sleeping) and common areas (including dayrooms, dining areas, recreation areas, and showers); and (iv) lay out tape markers at six-foot increments in areas where persons are required to line up or congregate for medications, security searches of cells and housing units, recreation, and food service.

The Settlement also requires Defendant to (i) medically isolate persons who test positive for COVID-19 in individual cells in separate housing units, instead of in cells or on tiers with non-positive, test-pending, or symptomatic persons; (ii) medically isolate symptomatic persons in individual cells in separate housing units, instead of in cells or on tiers with positive or other symptomatic persons; and (iii) restrict the transfer of prisoners from other jurisdictions and within the Broward County Jail facilities, unless necessary as detailed in the Settlement.

4.   Screening, Testing, and Contact Tracing

The Settlement requires Defendant to test all of the following for COVID-19 infection:  (1) prisoners and staff who display symptoms; (2) prisoners who are exposed to a person who has tested positive for COVID-19; and, (3) prisoners who are Medically Vulnerable and who have been incarcerated for a minimum of 72 hours, except testing must occur earlier if the conditions in (1) or (2) are met.  The Settlement also requires Defendant to identify persons who came into contact with others (staff or prisoners) who test positive or are symptomatic and to implement appropriate cohorting, quarantining, and medical isolation procedures; to monitor persons who are quarantined or medically isolated for known or suspect exposure to COVID-19, by, among other things, conducting twice-daily temperature checks, symptom screening, and pulse-oxygenation testing; and to provide no-cost vaccinations for seasonal influenza ("flu shots") to all prisoners to the extent Defendant's medical vendor is able to procure such vaccinations, with Defendant and its medical vendor making best efforts to procure sufficient vaccinations.

5.   Quarantining, Cohorting, Medical Isolation, and Medical Care

The Settlement requires Defendant to implement CDC-compliant cohorting, quarantining, and medical isolation procedures for those who test positive, who are symptomatic, or those who have come into close contact with such persons, including Jail staff.  The Settlement also requires Defendant to cohort newly admitted persons for 14 days in separate housing units and monitor them on a daily basis for COVID-19 infection before they are transferred to units in other Broward

County Jail facilities, except for prisoners who require mental health or medical services necessitating their being moved to the infirmary, where they will thereafter be cohorted for 14 days.

To encourage the reporting of COVID-19 symptoms and potential cases, the Settlement requires that Defendant waive all co-payments for sick calls for any individual reporting COVID-19 symptoms, such as fever, cough, diarrhea, aches, or breathing difficulties, and that all routine medical appointments shall include CDC-compliant COVID-19 symptom screening and temperature checks.

6.   Personal Protective Equipment, Cleaning and Disinfecting Procedures, and Personal Hygiene Supplies

The Settlement requires Defendant to provide prisoners with two face coverings that can be used as well as sanitized or replaced per manufacturers' instructions; to provide Broward County Jail staff face coverings and other personal protective equipment ("PPE"), and supplies appropriate to their duties in the Broward County Jail as recommended by the CDC; and to provide prisoners sufficient CDC-compliant equipment and supplies to clean and disinfect their cells, dayrooms, and common areas and surfaces on a daily basis and throughout the day.

7.   Education and Transparency

The Settlement requires Defendant to instruct prisoners on the latest CDC and other public health guidance on COVID-19, including best practices about preventing COVID-19 infection and transmission, which shall include instruction in a manner adequate for Class Members with low literacy or for whom English is not their primary language.  The Settlement requires Defendant to track and report statistics and other data concerning COVID-19 infection and transmission in the Broward County Jail to Class Counsel.

8.   Monitoring

Plaintiffs and their retained experts are entitled to conduct reasonable monitoring of the Broward County Jail's compliance with the Settlement including the right to inspect the Broward County Jail facilities, interview staff and Class Members, request and receive documents and information while off-site, review and receive copies of relevant records, and observe practices related to compliance with the provisions of the Settlement.  All recorded images from inside the Broward County Jail shall be subject to review by Defendant, who has the right to object on

security grounds to the introduction of any such images into the public record, and may provide Plaintiffs with redacted images of such recordings.

9.   Expiration of Settlement

The Settlement shall expire in its entirety upon the earliest of:  (1) 12 months from the date of final approval if the COVID-19 emergency orders ("Emergency Orders") for both the State of Florida and Broward County have been lifted as of that date; (2) if the State and County Emergency Orders are lifted subsequent to 12 months from the date of final approval but before fifteen (15) months from the date of final approval, then on the date when the Emergency Orders are lifted; or (3) fifteen (15) months from the date of final approval of the Settlement.

**ARGUMENT**

**A.  Certification of the Settlement Class Is Appropriate.**

To certify a settlement class, the Court must determine that the proposed class (i) satisfies the Rule 23(a) factors common to all class actions, and (ii) is one of the three proper types of class actions under Rule 23(b).  *See Borcea* v. *Carnival Corp.*, 238 F.R.D. 664, 676 (S.D. Fla. 2006). Both of those requirements are met here.

1.   Each of the Rule 23(a) Factors is Met.

Under Rule 23(a), certification requires a class to satisfy four factors:  "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." *Valley Drug Co.* v. *Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003) (citing Fed. R. Civ. P. 23(a)).  Rule 23(a)'s requirements "will be read liberally in the context of a civil rights suit" such as this.  *Armstead* v. *Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986).  This Court previously held that the Rule 23(a) factors were met in this case (*see* ECF No. 52), and nothing has changed to disturb that conclusion.

**Numerosity.**  The first Rule 23(a) factor requires only that the class is "so numerous that joinder of all members is impracticable."  Rule 23(a)(1).  Generally, a class size of "more than forty is adequate." *Cox* v. *Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).  The Class is composed of all current and future detainees at the Broward County Jail.  With a current

Broward County Jail population of 3,475,[9] the Class is well in excess of the forty-member threshold for numerosity.

**Commonality.**  As required by Rule 23(a)(2), this action raises a number of issues common to all Class Members, including whether Defendant's policies and practices around COVID-19, as applied to all Class Members, violated Class Members' statutory and constitutional rights and exposed Class Members' to substantial risk of contracting COVID-19.  This case thus comfortably fits into the long line of cases finding the commonality requirement "satisfied by proof of the existence of systemic policies and practices that allegedly expose putative class members to a substantial risk of harm." *Groover* v. *Prisoner Transp. Servs., LLC*, 2018 WL 6831119, at *10 (S.D. Fla. Dec. 26, 2018) (collecting cases); *see also Gayle* v. *Meade*, 2020 WL 2744580, at *17 (S.D. Fla. May 22, 2020) ("Common questions also circle on the (in)adequacy of ICE's policies and practices governing the conditions of confinement, including ICE's failure to follow CDC Guidelines.").

**Typicality.**  Rule 23(a)(3)'s typicality requirement is satisfied here because "[a]ll claims in this class action arise from the same policy" and "are based on the same legal theory." *Ault* v. *Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012).  Specifically, the named Plaintiffs in this case claim that Defendant's COVID-19 policies and procedures at the Broward County Jail violate their statutory and constitutional rights.  Like the named Plaintiffs, all Class Members have been and are exposed to the same conditions as a result of Defendant's COVID-19 policies and procedures at the Broward County Jail and assert that those same policies and procedures violate their statutory and constitutional rights.  Plaintiff's claims are thus typical of the claims of all other Class members.  *See Gayle*, 2020 WL 2744580, at *20 (finding typicality requirement satisfied where "the proposed class members have suffered the same injury because they are subject to the same confinement under the same allegedly unconstitutional conditions caused by the same purported deliberate indifference by the same entity (*i.e.*, ICE) which is exposing them to the same risk of developing COVID-19.").

**Adequacy.**  The adequacy requirement "encompasses two separate inquiries:  (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether

---

[9]        *See* Ex. 5, at 2.

the representatives will adequately prosecute the action."  *Valley Drug Co.*, 350 F.3d at 1189 (citation and quotation marks omitted).

On the first inquiry, named Plaintiffs and all Class Members have suffered the same alleged harm with regard to the conditions of their confinement in the Broward County Jail resulting from Defendant's inadequate COVID-19 policies and procedures, and there are no named Plaintiffs or unnamed Class Members who have benefited from those conditions.  *See Ga. Advocacy Off.* v. *Jackson*, 2019 WL 8438491, at *7 (N.D. Ga. July 30, 2019) (adequacy requirement met where "Plaintiffs have stated that there are no known conflicts, and the Court f[ound] no conflict based on the matters presented by Defendants and otherwise [wa]s aware of no fundamental conflict of interest between counsel, the class representatives, and the class").

As to the second inquiry, named Plaintiffs have vigorously prosecuted this action through Class Counsel, who have filed a detailed complaint and preliminary injunction motion well-supported by voluminous evidence and legal authority.  (ECF Nos. 1, 18.)  Class Counsel have also worked to negotiate a settlement agreement with Defendant that stands to benefit all Class Members.  In addition, Class Counsel have investigated complaints of Defendant's noncompliance with the Settlement's terms and sought information and discovery from Defendant related to infection rates and cohorting efforts.  The named Plaintiffs' claims have been prosecuted by Class Counsel well qualified in civil rights cases, including substantial experience litigating civil rights actions on behalf of detainees.  Therefore, the interests of the Class Members will be adequately protected by named Plaintiffs and Class Counsel and Rule 23(a)'s adequacy requirement is satisfied.

## 2.  The Requirements of Rule 23(b)(2) Are Satisfied Here.

A class may be maintained under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Civil rights cases like this one are "prime examples" of Rule 23(b)(2) cases.  *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 614 (1997)*; see Braggs* v. *Dunn*, 317 F.R.D. 634, 667 (M.D. Ala. 2016) ("Rule 23(b)(2) has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities." (quotation marks and citations omitted)).  As applied here, named Plaintiffs, on behalf of the Class, have negotiated with Defendant for class-wide relief to address "systemic deficiencies that create a substantial risk of serious harm," which is a "well

recognized" challenge in the context of jails and prisons. *Braggs*, 317 F.R.D. at 668. The Settlement requires Defendant to act across all Broward County Jail facilities to protect Class Members from the risk of serious illness or death from COVID-19. Among other things, the Settlement requires Defendant to provide adequate PPE and cleaning supplies, to expand testing, and to cohort or quarantine inmates when appropriate.

The action can be maintained under Rule 23(b)(2) and the Class satisfies each of the Rule 23(a) requirements. Thus, class certification is appropriate.

**B. The Court-Approved Notice Satisfies Rule 23 and Due Process.**

The Due Process Clause and Rule 23 require a court to "direct notice . . . to all class members who would be bound by the" settlement. Fed. R. Civ. P. 23(e)(1)(B). Thus, before granting final approval, a court must ensure that reasonable and adequate notice was provided to class members. *See Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 812-13 (1985).

Here, the Notice satisfies Rule 23(e) and Due Process because it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). As ordered by the Court, the Notice was published (in English, Creole and Spanish) and distributed to Class Members beginning on January 25, 2021, and for at least twenty-one days thereafter.[10] (ECF No. 54.) The Notice was displayed in all the Broward County Jail facilities and informed Class Members of the substantive terms of the Settlement and directed Class Members where to obtain additional information about the Settlement. The Notice informed Class Members of their right to object to the Settlement by mailing objections to the Clerk of Court, postmarked no later than April 12, 2021.

**C. The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.**

Under Rule 23(e), court approval is required for settlement of a class action. A court's analysis should be informed by the "overriding public interest in favor of settlement," *Ass'n for*

---

[10] On agreement between Class Counsel and Defendant, the Notice was published in the Broward County Jail facilities at least through the end of the objections period on April 12, 2021. Two class members asserted in motions filed with the Court on February 23, 2021, that they had not received copies of the Settlement from the Broward County Sheriff's Office ("BSO") after making a request of BSO (ECF Nos. 57, 58). On February 25, 2021, BSO delivered copies of the Settlement to these individuals. (ECF No. 61).

*Disabled Americans, Inc.* v. *Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002), and a court should approve a settlement so long as "it is fair, adequate, and reasonable and is not the product of collusion between the parties." *Bennett* v. *Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citation and quotation marks omitted). The policy favoring settlement is especially relevant in class actions where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g*., *Ass'n for Disabled Americans, Inc.*,211 F.R.D. at 466.

In reviewing a class settlement, courts must find that there has been no fraud or collusion between the parties and that the settlement is "fair, adequate, and reasonable." *M.D.* v. *Centene Corp.*, 2020 WL 7585033, at *4 (S.D. Fla. Oct. 7, 2020) (citing *Lipuma* v. *Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005), and *Bennett*, 737 F.2d at 986). Under Rule 23(e)(2), settlements may be approved if the court finds that the settlement is "fair, reasonable, and adequate" after considering whether (1) the settlement class was adequately represented, (2) the settlement was negotiated at arm's length, (3) the relief provided is adequate (taking into account the risk of litigation, the method for processing class members' claims, and agreements concerning attorneys' fees), and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). Further, in this Circuit, courts evaluating whether a settlement is "fair, adequate, and reasonable," look to the six-factor test outlined in *Bennett*. *See, e.g.*, *Centene Corp.*, 2020 WL 7585033, at *4. The requirements of Rule 23(e) and the *Bennett* factors are satisfied here.

1. <u>The Class Was Adequately Represented.</u>

The Class was adequately represented by named Plaintiffs and Class Counsel who vigorously prosecuted this action and worked to negotiate a settlement agreement with Defendant that will provide significant benefit and relief to all Class Members. In evaluating the adequacy of class counsel and class representatives, courts consider whether class counsel and plaintiffs "had an adequate information base before negotiating and entering into the settlement." *Burrow* v. *Forjas Taurus S.A.*, 2019 WL 4247284, at *7 (S.D. Fla. Sept. 6, 2019) (internal quotation marks omitted). In negotiating the Settlement, Class Counsel were informed by hundreds of interviews conducted with current and former inmates over several months. Class Counsel was also informed by publicly available reporting on the rise of COVID-19 cases in the country and Florida and other litigations across the country concerning COVID-19 conditions in other prisons and jails.

-10-

Moreover, Defendant agreed to provide certain discovery about current conditions at the Broward County Jail and COVID-19 testing results to provide Class Counsel "sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Francisco* v. *Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008).

2. The Settlement Is the Product of a Good-Faith, Informed, and Arm's-Length Negotiation.

The Settlement should be approved because it is "not the product of collusion between the parties." *Cotton* v. *Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Wilson* v. *Everbank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016). In such cases, "[t]here is a presumption of good faith in the negotiation process." *Id.* Here, the Settlement is the result of intensive, arm's-length negotiations over a period of months between experienced attorneys who are familiar with class action litigation involving incarcerated persons, and with the legal and factual issues of this case. There is no doubt this Settlement was at all times arms-length, and it therefore carries a presumption of fairness. Where, as here, there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube* v. *Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 703 (M.D. Fla. 2005).

3. The Relief Is Adequate.

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment. The factors enumerated in Rule 23(e)(2)(C) "are analogous to several of the *Bennett* factors, which the Eleventh Circuit has adopted as the standard for approving a class action settlement." *Burrow*, 2019 WL 4247284, at *9. Accordingly, courts in the Eleventh Circuit use the *Bennett* factors to guide their Rule 23(e)(2)(C) analysis of a settlement. *See Centene Corp.*, 2020 WL 7585033, at *6. The *Bennett* factors support a finding that Rule 23(e)(2)(C) weighs in favor of approving the Settlement.

**Likelihood of Success at Trial and Range of Recovery.**  While Plaintiffs and Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to litigation, and the significant procedural hurdles to relief through a litigated judgment.  When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."  *Cotton*, 559 F.2d at 1330.  Courts have determined that settlements may be reasonable even where Plaintiffs recover only part of the relief requested in their complaint.  *See Behrens* v. *Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

Class Counsel have a thorough understanding of the practical and legal issues they would face if they continued litigating these claims against Defendant.  Class Counsel were also informed by litigation around the country concerning COVID-19 conditions in other prisons and jails, which helped Class Counsel evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at trial.  In this case, Plaintiffs face a number of challenges to secure relief.  Given the substantial benefits that the Settlement provides to Class Members and the extraordinary public health crisis that the Settlement aims to address in a timely fashion, the Settlement is fair and represents a reasonable recovery for the Class in light of Defendant's defenses and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.  Moreover, the Settlement preserves the rights of Class Members to seek additional relief on an individual basis as circumstances warrant, up to and including release.

**Complexity, Expense, and Duration of Litigation.**  Fully litigating this case would tax the court system, require a massive expenditure of public and private resources, and ultimately would be impracticable in these unique circumstances.  The Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  Ongoing litigation would involve substantial and expensive fact and expert discovery, lengthy pretrial proceedings in this Court and the appellate courts, and, ultimately, a trial and potential appeals.  Without the protections assured by the Settlement, the Class Members risk serious illness or even death as COVID-19 infections rise in Broward County and the Broward County Jail.[11]  The

---

[11]    *Compare* Ex. 5, at 1 (four positive inmates), *with* Ex. 6, at 1 (Public Records Response - Email from Broward Cnty. Sheriff's Office to Anjana Samant (Apr. 25, 2021, 1:50pm EST) (one

protections and procedures detailed in the Settlement give Class Members the best chance of being protected from the spread of COVID-19 while confined to the Broward County Jail.

**Substance and Amount of Opposition to the Settlement.** In determining whether a proposed settlement is fair, reasonable and adequate, "the reaction of the class is an important factor." *Lipuma*, 406 F. Supp. 2d at 1324. Here, as of the date of this submission, 24 members of the proposed Class filed objections to the proposed Settlement with the Court.[12] Class Counsel have reviewed all the responses. The 24 objections, both in number and substance, counsel in favor of Settlement approval.

As an initial matter, the 24 objections filed amount to less than one percent of the at least 3,475 Class Members eligible to file objections.[13] *See Perez* v. *Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement.").

The substance of the objections also counsels in favor of Settlement approval. Of the 24 responses, only six nominally object to the Settlement. (ECF Nos. 56, 65, 72, 83, 86, 87.) The remaining 18 objections do not object to the Settlement, but rather to Defendant's failure to adhere to the Settlement terms, as well as to other conditions in the Broward County Jail that the Class Members find unacceptable, including lack of handicap accessibility for individuals with disabilities, poor quality of food, and inadequate heat in the cells. As detailed below, neither group of objections counsels against Settlement approval and the majority actually counsel in its favor.

Of the six responses that object to the Settlement, one Class Member objects based on his understanding that the Settlement has "force[d]" 21-hour lockdowns, which have in turn slowed

---

positive inmate)). *See also* Krischer Goodman, *South Florida Hospitals Are Admitting More COVID Patients as Variants Spread* (Apr. 24, 2021), https://www.sun-sentinel.com/coronavirus/fl-ne-south-florida-covid-hospitalizations-continue-20210424-jxuqa5zerfc2lfaturmabsbke4-story.html ("Broward County has the most cases of variants in the state . . . . [Broward County] also has the largest number of patients who have been hospitalized with the variant[.]").

[12]     One Class Member filed two responses. Some Class Members have signed onto other Class Members' responses. Additionally, although three objections were postmarked after the close of the objection period, (*see* ECF Nos. 93, 96, 97), Class Counsel considered all objections filed to date in the preparation of this motion.

[13]     *See* Ex. 5, at 2.

legal proceedings and caused mental health issues.  (ECF No. 83.)  While recognizing the seriousness of this grievance, the Settlement does not contain any provisions requiring or even addressing lockdowns, and as such this response does not provide a basis for rejecting the Settlement.  *See Gaddis* v. *Campbell*, 301 F. Supp. 2d 1310, 1315 (M.D. Ala. 2004) (approving settlement for injunctive relief in prison suit where "[m]any of the objections filed in this case are based on incorrect information or a lack of understanding of the settlement agreement").

Another Class Member objects on the basis that the Settlement does not provide the same protections as those "ordered by the President . . . and the Governor" and that the Settlement will not protect the citizens of Broward County due to the risk posed by the release of detainees from jail after they have come into contact with other inmates who have COVID-19.  (ECF No. 86.)  Because the Settlement does not relieve Defendant of its obligations under federal and state law, and in fact, imposes many requirements that exceed those required by law (*see, e.g.*, Ex. 1 ¶ 44), this objection similarly does not provide a basis for rejecting the Settlement.  *See Gaddis*, 301 F. Supp. 2d at 1315.

A third Class Member lists a specific objection to Paragraph 44 of the Settlement, stating that "testing needs to be expanded to all inmates and staff, regardless of age or symptoms."  (ECF No. 72.)  While universal testing has not yet been implemented at the Broward County Jail, Paragraph 44 of the Settlement provides possible mechanisms for the very sort of universal testing the objector demands:

> Defendant shall report to Plaintiffs on **efforts made to expand testing to all prisoners and staff at the Jail**, and shall comply with CDC Guidance for correctional and detention facilities that expand testing beyond that provided in this Agreement. The **parties shall confer regularly** as to whether expanded or **universal testing should be implemented**. These efforts shall include ongoing communications with local and state health officials to secure any testing supplies, equipment and personnel necessary to **provide expanded or universal testing** consistent with public health guidelines.

(Ex. 1 ¶ 44 (emphasis added).)  This provision was the subject of intense negotiation and its final language represents a compromise between Plaintiffs and Defendant.  Given the risks of pursuing this action through further litigation, including that Class Members could ultimately fail to obtain any relief, or that even if Class Members prevailed, sought-after safety measures would not be implemented for many months while the pandemic continues, this modification does not outweigh

-14-

the reasonableness of approving the Settlement.  *See, e.g.*, *Riker* v. *Gibbons*, 2010 WL 4366012, at *7 (D. Nev. Oct. 28, 2010) (approving settlement for injunctive relief in prison medical suit despite objections because "[a]n adverse decision on the merits of plaintiffs' claims would result in not only denial of declaratory relief, but would deprive plaintiffs of the relief guaranteed by the settlement agreement, to wit, improvement in . . . delivery of medical care"); *Isby* v. *Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (finding in the context of prison litigation that "[t]o the extent that objecting members complain that the agreed entry does not go far enough in alleviating conditions at the [prison] we reply that the essence of settlement is compromise.  A settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs." (internal citations and quotation marks omitted)).

The final three objections fail to identify any aspect of the Settlement to which they object, and instead address conditions at the Broward County Jail and alleged shortcomings in Defendant's actions, such as overcrowding and unsanitary conditions. (ECF Nos. 56, 65, 87.)  The concerns of these objectors overlap with the concerns raised by the remaining 18 objectors who do not object to the Settlement at all, but instead to Defendant's failure to comply with its terms, as well as other conditions in the Broward County Jail that the Class Members find unacceptable, including lack of handicap accessibility for individuals with disabilities, poor quality of food, and inadequate heat in the cells.  (ECF Nos. 70, 71, 73-82, 84, 85, 92, 93, 96, 97.)  Defendant's failure to abide by the Settlement during the objection period underscores the need for final approval as a means of providing a mechanism for holding Defendant to its terms.

Two examples are illustrative.  At least fourteen of the objectors raise concerns about overcrowding and housing plans that do not allow for social distancing.  (ECF Nos. 56, 70-79, 81, 87, 92.)  One Class Member, for instance, reports that "the cells in [his] unit are almost filled . . . with 2 people in a cell in which the beds are not a social distance of [] 6ft apart," (ECF No. 71), and another class member reports that over a period of four days, his unit was 14 people overcapacity (ECF No. 77).  Paragraphs 36 and 37 of the Settlement require Defendant to "[h]ouse medically vulnerable persons so they can maintain social distancing of at least six feet from others when possible," to "[i]mplement a housing plan that would allow, where possible, prisoners to maintain six-feet of social distance from others while in their cells," and to report instances of noncompliance to Class Counsel, thus addressing these concerns.  (Ex. 1 ¶¶ 36-37.)

Thirteen of the objectors also raise concerns that Class Members are not being quarantined for the clinically required 14 days before being placed back into the general population. One Class Member reports that after he and 32 other Class Members from his unit tested positive for COVID, the 33 Class Members were quarantined for only ten days before being returned to their normal unit. (ECF No. 87.) Another reports that "inmates are being housed in cells with other prisoners who are either pending COVID-19 results or their status is unknown." (ECF No. 72.) Paragraph 45 of the Settlement, which requires Defendant to "[i]dentify persons who came into contact with others (staff or prisoners) who test positive or are symptomatic and apply clinically appropriate cohorting, quarantining, and medical isolation procedures," addresses these concerns. (Ex. 1 ¶ 45; ECF Nos. 71-77, 79, 85-87, 92, 96.)

The concerns of the majority of the objectors, then, do not expose a failure in the Settlement, but rather a failure of Defendant to comply with its terms. They are also consistent with the reports Class Counsel received from Class Members and raised directly with Defendant over the course of the objection period, to which Defendant's responses have been plainly unsatisfactory.[14] For example, when Class Counsel raised concerns about overcrowding with Defendant during the interim period, Defendant's responses included "[n]o information has been found to verify this allegation"; "[t]wo-man cells are only utilized if single cells are unavailable"; and that, when it comes to social distancing "compliance is a constant struggle."[15] Other concerns raised by Class Counsel were denied by Defendant,[16] or not addressed substantively,[17] responses

---

[14]   On agreement between Class Counsel and Defendant, an outgoing telephone hotline was set up in the  Jail shortly after the Preliminary Approval Order to facilitate direct communication between Class Members and Plaintiffs' counsel about the Settlement.  Class Counsel has taken 103 calls with Class Members through the hotline to date.

[15]   Ex. 7, at 4, 10, 11 (Public Records Response - Email from Broward Cnty. Sheriff's Office to Elizabeth Olsen (Apr. 12, 2021, 2:14pm EST)).

[16]   Ex. 7, at 5 (denying that a Class Member classified as under confinement for COVID was erroneously placed in a unit with a medically vulnerable Class Member).

[17]   Ex. 8, at 2-3 (Public Records Response - Email from Broward Cnty. Sheriff's Office to Elizabeth Olsen (Apr. 29, 2021, 5:09pm EST) (in response to complaints from named detainees about an extended quarantine without clean clothes and access to commissary, Defendant simply noted BSO's generic policies without addressing the substance of the complaints).

that are particularly unsettling given the parties' express agreement to comply with the Settlement's terms in this interim period. (Ex. 1 ¶ 6).

Final approval of the Settlement will help to alleviate Class Members' concerns. The Settlement places an affirmative obligation on Defendant to report violations, (*see* Ex. 1 ¶¶ 62-63), and the Settlement anticipates any challenges that might come with relying on Defendant's self-reporting by granting Class Counsel the ability to "conduct reasonable monitoring of the Jail's compliance," including the ability to conduct on-site inspections, interview staff and class members, and to request and review documents and records including recordings from inside the jail under certain conditions. (Ex. 1 ¶ 19.) These discovery mechanisms are needed so that Class Counsel can investigate reports of noncompliance and provide Class Members with a legal remedy. In sum, far from counseling against final approval, the objections that relate to noncompliance demonstrate the utility of the Settlement, and the need for final approval to protect the interests of these objectors and the Class Members as a whole. (*See* Vijayan Decl., Ex. 3 ¶¶ 1, 31; Cohen Decl., Ex. 4 ¶ 35.)

**Stage of the Proceedings.** Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Still, "courts favor early settlement" and "vast formal discovery need not be taken." *Id.* Further, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Id.* at 1325.

Plaintiffs settled this litigation after months of interviews with dozens of Class Members and review of certain discovery data and information from Defendant. Further, Plaintiffs were informed by publicly available reporting on the rise of COVID-19 cases in the country and Florida, and litigation around the country concerning COVID-19 conditions in other prisons and jails. Given the extraordinary circumstances of this case, review of this information and the interviews allowed Settlement Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.*; *see also Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *11.

4.   Class Members Are Treated Equitably Relative to Each Other.

Finally, Rule 23(e)(2)(D) requires that the class members be treated equitably relative to one another. The Settlement treats all Class Members equitably because all Class Members are

-17-

eligible to receive the same benefits provided by the Settlement if they meet the same requirements. *See Burrow*, 2019 WL 4247284, at *10 (finding the settlement treated all class members equitable where "[t]here is no distinction between the benefits offered, and all [class members] received the benefit").

### D. The Settlement Complies with the Prison Litigation Reform Act.

The Settlement complies with the Prison Litigation Reform Act ("PLRA") because it is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Further, the Settlement will have no "adverse impact on public safety or the operation of a criminal justice system" but rather the Settlement will further public safety by protecting Class Members from contracting COVID-19. *Id.* In turn, the Settlement will also prevent the spread of COVID-19 to persons exposed to Class Members, including Broward County Jail staff and, in turn, the general public. Additionally, the Settlement does not require Defendant to "exceed his . . . authority" under the law, *Id.* § 3626(a)(1)(B), or "direct[] the release from or nonadmission of prisoners to a prison." *Id.* § 3623(a)(3), (g)(4).

In submitting an initial Settlement, as here, "'parties are free to make any concessions or enter into any stipulations they deem appropriate,' and the court does not need to 'conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute.'" *Dunn* v. *Dunn*, 318 F.R.D. 652, 682 (M.D. Ala. 2016) (quoting *Cason* v. *Seckinger*, 231 F.3d 777, 785 n.8 (11th Cir. 2000)). Here, Plaintiffs and Defendant stipulated in the Settlement that the Settlement complies with the PLRA requirements. (Ex. 1 ¶ 3.)

### E. The COVID-19 Virus Remains a Serious Threat and There Is a Continued Need for the Settlement.

Despite progress in efforts to vaccinate the population, the COVID-19 pandemic is not over, and this Settlement remains as crucial as ever to protect Class Members. (*See* Vijayan Decl., Ex. 3 ¶¶ 1, 31.) Several new variants of COVID-19 have become pervasive, and at least two of these variants has been identified as substantially more contagious than the initial strain of the

virus. (*See id.* ¶¶ 3-8; *see also* Cohen Decl., Ex. 4 ¶¶ 8-9.)[18]  The severity of COVID-19 infections continues to vary substantially and unpredictably for medically vulnerable individuals and the population at large, with at least one-third of individuals reporting symptoms that persist for four weeks or more.  (*See* Vijayan Decl., Ex. 3 ¶¶ 9-13.)  Although the authorization of vaccinations presents a substantial new development, questions about the extent and duration of the immunity conferred by these vaccines or through natural infection remain uncertain, as does the ability of vaccinated individuals to transmit the virus to others.  (*See id.* ¶¶ 14-22; *see also* Cohen Decl., Ex. 4 ¶ 7.)  Moreover, current vaccines have already been found to be less effective against certain variants of COVID-19.  (*See* Vijayan Decl., Ex. 3 ¶ 17.)  Given the concerns over the effectiveness of current vaccines against both those variants that have already been identified and those that could develop in the future, the World Health Organization has emphasized that "we need to do everything possible to stop the spread of the virus in order to prevent mutations that may reduce the efficacy of existing vaccines."[19]

While the risks associated with COVID-19 continue to pose substantial challenges for all populations, these risks are heightened for incarcerated individuals.  (*See* Cohen Decl., Ex. 4 ¶¶ 6, 11.)  Further, it is unknown whether herd immunity to COVID-19 can be achieved through either natural immunity or vaccination.  (*See* Vijayan Decl., Ex. 3 ¶ 16.)  To the extent herd immunity is even possible, experts believe that it will be months before Florida reaches the required level of vaccination for herd immunity.[20]  Attempts to achieve herd immunity in Florida may be further frustrated if the rate of vaccination in Florida continues to decline.  (*See* Vijayan Decl., Ex. 3 ¶ 18.)

---

[18]    Five "variants of concern" have been detected in Florida, with Broward County leading the state in both number of cases and number of hospitalizations with these new variants.  Goodman, *supra* note 11.

[19]    World Health Organization, *The Effects of Virus Variants on COVID-19 Vaccines*, (Mar. 1, 2021), https://www.who.int/news-room/feature-stories/detail/the-effects-of-virus-variants-on-covid-19-vaccines?gclid=EAIaIQobChMIk-SvmNGK8AIVCYbICh26QwNGEAMYASAAEgLRN_D_BwE

[20]    Allison Ross & Megan Reeves, *To Beat Coronavirus, Herd Immunity Is the Goal.  Can Florida Get There?*, TAMPA BAY TIMES (Apr. 22, 2021), https://www.tampabay.com/news/health/2021/04/22/to-beat-coronavirus-herd-immunity-is-the-goal-can-florida-get-there/ ("[A] professor of epidemiology at USF who is modeling predictions of the coronavirus in Florida, estimates that the state will reach herd immunity by December if the vaccination rate and current social measures stay the same.").

Florida officials showed reluctance to vaccinating correctional facility detainees.[21]  Only recently has Florida made vaccines available to inmates but there is no clear distribution plan or schedule.[22]

With COVID-19 infection rates climbing in Broward County[23] and at the Broward County Jail,[24] the Settlement is necessary to protect Class Members from the serious risks of illness or death associated with COVID-19—risks exacerbated by their communal setting.  (*See* Vijayan Decl., Ex. 3 ¶¶ 1, 31; *see also* Cohen Decl., Ex. 4 ¶¶ 5, 35.)

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for this Court to issue an Order granting final approval of the Settlement and certification of the Class.

 Dated:  May 3, 2021

                                        Respectfully submitted,


                                        **/s/** *Benjamin James Stevenson*
                                        **Benjamin James Stevenson**
                                        Florida Bar. No. 598909
                                        ACLU FOUNDATION OF FLORIDA
                                        3 W. Garden St., Suite 712

---

[21]    Governor Ron DeSantis recently criticized states that prioritized vaccinating correctional facility detainees, saying "[t]here's no way you're going to get some prisoner a vaccine over a senior citizen[.]"  Kylie McGivern, *Florida Prison Staff, Inmates Wait on Word for Vaccine Eligibility*, ABC NEWS (Mar. 15, 2021), https://www.abcactionnews.com/news/full-circle/florida-prison-staff-inmates-wait-on-word-for-vaccine-eligibility.

[22]    The Florida division of Emergency Management did not announce until April 6, 2021, that inmates were getting the COVID-19 vaccine.  Kylie McGivern, *Florida Inmates Start to Receive COVID-19 Vaccine*, ABC NEWS (Apr. 6, 2021), https://www.abcactionnews.com/news/local-news/i-team-investigates/florida-inmates-start-to-receive-covid-19-vaccine;   Katie   LaGrone, *Dozens of Local Jails in Florida Have Started Offering Inmates the COVID-19 Vaccine but Not All Are Following Suit*, ABC NEWS (Apr. 13, 2021), https://www.abcactionnews.com/news/local-news/i-team-investigates/dozens-of-local-jails-in-florida-have-started-offering-inmates-the-covid-19-vaccine-but-not-all-are-following-suit (noting that some correctional facilities have started offering vaccines to inmates but not all correctional facility have, absent clear state guidance).

[23]    Goodman, *supra note* 5 ("The positivity rate rose slightly on Friday in . . . Broward Count[y].").

[24]    *Compare* Ex. 5, at 1 (four positive inmates), *with* Ex. 6, at 1 (one positive inmate).

-20-

Pensacola, FL  32502-5636
Telephone:  (786) 363-2738
bstevenson@aclufl.org

**Jacqueline Nicole Azis**
Florida Bar No.101057
ACLU FOUNDATION OF FLORIDA
4023 N. Armenia Ave., Suite 450
Tampa, FL 33607
Telephone:  (786) 363-2708
jazis@aclufl.org

**Daniel Tilley**
Florida Bar No. 102882
ACLU FOUNDATION OF FLORIDA
4343 W. Flagler St., Suite 400
Miami, FL 33134
Telephone:  (786) 363-2714
dtilley@aclufl.org

**Anjana Samant** (*pro hac vice*)
**Steven M. Watt** (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad St., 18th Fl.
New York, NY  10004
Telephone:  (212) 549-2500
asamant@aclu.org
swatt@aclu.org

**Eric Balaban** (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
NATIONAL PRISON PROJECT
915 15th St., N.W.
Washington, D.C. 20005
Telephone:  (202) 393-4930
ebalaban@aclu.org

**Curtis Filaroski**
Florida Bar. No. 111972
**Kathryn Strobach**
Florida Bar No. 670121
DISABILITY RIGHTS FLORIDA, INC.
1000 N. Ashley Drive, Suite 640
Tampa, FL 32308
Telephone:  (850) 488-9071
curtisf@disabilityrightsflorida.org
kathryns@disabilityrightsflorida.org


**Suhana S. Han** (*pro hac vice*)
**Akash M. Toprani** (*pro hac vice*)
**Elizabeth N. Olsen** (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY  10004
Telephone:  (212) 558-4000
hans@sullcrom.com
toprania@sullcrom.com
olsene@sullcrom.com

*Attorneys for Plaintiffs/Petitioners*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via

CM/ECF and served on all counsel of record via electronic notices generated by CM/ECF on May

3, 2021.

/s/ *Benjamin James Stevenson*
**Benjamin James Stevenson**
Florida Bar. No. 598909
ACLU FOUNDATION OF FLORIDA
3 W. Garden St., Suite 712
Pensacola, FL  32502-5636
Telephone:  (786) 363-2738
bstevenson@aclufl.org