UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:20-cv-61113-DIMITROULEAS

CODY BARNETT, et al.,

    Plaintiff,

v.

GREGORY TONY,

    Defendant.

_____/

**ORDER APPROVING IN PART REPORT OF MAGISTRATE JUDGE; SUSTAINING IN PART OBJECTIONS; GRANTING IN PART AND DENYING IN PART MOTION FOR ENFORCEMENT AND MODIFICATION**

THIS CAUSE is before the Court on Plaintiffs' Motion for Enforcement and Modification [DE 130] and the Report and Recommendation of Magistrate Judge Lurana S. Snow (the "Report") [DE 166]. The Court has conducted a *de novo* review of the Report [DE 166], the parties' cross-objections to the Report [DEs 167, 168], the Responses [DEs 169, 170] thereto and the record herein. The Court is otherwise fully advised in the premises.

**I.**    **BACKGROUND**

Plaintiffs, on behalf of themselves and proposed class members, filed this action against Gregory Tony, in his official capacity as Sheriff of Broward County, Florida ("BSO" or "Defendant"), on June 5, 2020, alleging that detainees imprisoned at the Broward County Jail (the "Jail") were being exposed to a risk of COVID-19 infection in violation of their rights under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, and the Rehabilitation Act. *See* [DE 1]. Plaintiffs sought remedies to address substantial risks of their contracting the COVID-19 virus, and of suffering serious illness or death should they contract

1

the virus. *Id.* Plaintiffs and Defendant subsequently negotiated a Settlement Agreement, which was executed on November 30, 2020 (the "Agreement" or "Consent Decree"). *See* [DE 103-1]. The Court approved the Agreement and certified the Settlement Class on May 13, 2021, obligating Defendant to undertake certain actions to prevent the spread of COVID-19 among detainees at the Jail. *See* [DEs 112,103-1]. In the approval Order, the Court retained jurisdiction over this action for the purpose of enforcing the Agreement. [DE 112] at ¶ 5.

On September 21, 2021, Plaintiffs filed the instant Motion for Enforcement and Modification, asserting that Defendant's failures combined with changed circumstances have led to a swell in infections, requiring this Court's intervention to enforce and/or modify the Agreement. *See* [DE 130] at 8–10. First, Plaintiffs argue that Defendant failed to carry out certain commitments as outlined in the parties' Agreement. *Id.* at 9. For example, Plaintiffs assert that Defendant failed to fulfill the clear requirement for BSO to test all detainees for COVID-19 upon admission. *Id.* at 9. In addition to an enforcement order directing Defendant to comply with Defendant's obligations under the Agreement to cure these deficiencies, Plaintiffs argue that the Agreement should be modified to reflect knowledge not contemplated at the time the Agreement was originally executed in November 2020. *Id.* at 10.

After briefing and a full-day evidentiary hearing, Magistrate Judge Snow issued a Report and Recommendation on November 19, 2021, recommending that Plaintiffs' Motion be granted in part and denied in part. *See* [DE 166] at 29–30. The parties subsequently filed cross-objections to the Report, which the Court will now resolve.

II. **LEGAL STANDARD**

A party seeking to challenge the findings in a report and recommendation of a United States Magistrate Judge must file "written objections which shall specifically identify the

portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Macort*, 208 F. App'x at 784 (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)). If a party makes a timely and specific objection to a finding in the report and recommendation, the district court must conduct a *de novo* review of the portions of the report to which objection is made. *Macort*, 208 F. App'x at 783-84; see also 28 U.S.C. § 636(b)(1). The district court may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. *Macort*, 208 F. App'x at 784; 28 U.S.C. § 636(b)(1). Accordingly, the Court has undertaken a *de novo* review of the record and the Objections.

### III. DISCUSSION

Magistrate Judge Snow found that BSO had violated several provisions of the Agreement, including by failing to test detainees upon admission, failing to test detainees before they are released or otherwise leave the Jail, failing to re-test detainees in quarantine units every 3-7 days, failing to test and screen detainees prior to transfers to different facilities, and failing to maintain a list of medically vulnerable detainees to be symptom screened and temperature checked daily and to be housed in a manner that facilitates social distancing. *See* [DE 166] at 11, 12, 13, 14–15, 20. As a result, Magistrate Judge Snow recommends specific relief regarding these areas of non-compliance. *Id.* at 29–30.

In addition, Magistrate Judge Snow found that Plaintiffs failed to meet their burden with respect to BSO's violation of several other provisions of the Agreement. Specifically, Magistrate Judge Snow found no further action by Defendant is needed with regard to symptom screening

detained persons re-entering jail, testing symptomatic and exposed detainees, screening staff, separating quarantine and cohort units, contact tracing, cohorting upon admission, re-testing and monitoring during cohorting, medical isolation of symptomatic detainees, social distancing requirements, personal protective equipment, and educational information. *Id.* at 12, 15–19, 21–23, 25, 30. Judge Snow also declined to recommend monthly compliance reporting and appointment of a monitor. *Id.* at 26, 30–31. Finally, Judge Snow recommends that Plaintiff's request for modification be denied. *Id.* at 29, 31.

### A. Defendant's Objections

Defendant does not object to the factual findings of the Report. Rather, Defendant objects to the Report solely on the basis that Plaintiff's Motion was procedurally erroneous and improper. Specifically, Defendant contends that the Magistrate erred because the procedure and standards governing a motion for contempt and sanctions apply to the instant Motion, which requires Plaintiff meet an elevated "clear and convincing" burden of proof and not the preponderance of the evidence standard upon which the Magistrate's finding of facts are based.

Having carefully considered Defendant's Objections and Plaintiffs' Response to Defendant's Objections and having reviewed the arguments, case law, and evidence presented, the Court overrules the Objections. The Court agrees with the analysis and conclusions regarding the proper procedure and burden of proof for enforcement of a settlement agreement set forth in Magistrate Judge Snow's well-reasoned Report. *See* [DE 166] at 7–9.

In its Objections to the Report, Defendant argues, as it did in its Response to Plaintiffs' Motion for Enforcement and Modification, that Plaintiffs' motion is procedurally improper because Plaintiffs must first establish by clear and convincing evidence that Defendants have violated a prior Court order, after which a show cause order would be entered by the Court.

Plaintiffs have repeatedly stated, however, that they are not requesting the Court hold Defendant in contempt and are only seeking enforcement and modification of the Agreement. *See* [DE 130] at 35 ("Because compliance is the urgent goal, Plaintiffs at this time ask only for a detailed enforcement order."); *see also* [DE 170] at 5–6 ("Plaintiffs opted not to seek contempt and sanctions at that time, however, and instead sought enforcement and modification to ensure BSO's compliance."). As noted by Magistrate Judge Snow, courts have recognized the distinction between a motion to "punish violators for contempt" and a motion to "enforce settlement agreements in actions pending before them." *S. Beach Suncare, Inc. v. Sea & Ski Corp.*, No. 98-1114-CIV-MORENO, 1999 WL 350458, at *5–6 (S.D. Fla. May 17, 1999). Numerous courts in this district have granted a motion to enforce a settlement agreement or consent decree without applying the procedure and standards governing a motion for contempt and sanctions. *See, e.g., Malvaes v. Constellation Brands, Inc.*, No. 14-21302-CIV, 2016 WL 4007332, at *2 (S.D. Fla. June 23, 2016); *United States v. City of Fort Pierce*, No. 08-14309-CIV, 2011 WL 13174650, at *3 (S.D. Fla. July 11, 2011).

Here, Magistrate Judge Snow made a ruling on the proper procedure and standard of proof at the outset of the evidentiary hearing and reaffirmed the ruling in the Report. *See* [DE 163] at 5–6; [DE 166] at 8–9. Magistrate Judge Snow noted that "[a]lthough Plaintiffs cite in their Motion cases relating to civil contempt, they make clear that they are not requesting the Court to hold Defendant in contempt at this time. Plaintiffs seek only enforcement and modification of the Settlement Agreement." [DE 166] at 8. Further, Magistrate Judge Snow acknowledged that "the Settlement Agreement specifically contemplates such a motion for enforcement and distinguishes it from a motion for contempt." *Id.*; [DE 103-1] at ¶ 24. Defendant fails to cite any authority suggesting that the *only* way to enforce a settlement

agreement is through a contempt proceeding. *See, e.g., Peery v. City of Miami*, 977 F.3d 1061 (11th Cir. 2020) (setting forth the proper procedure for obtaining contempt sanctions); *Mercer v. Mitchell*, 908 F.2d 763 (11th Cir. 1990) (same). Nor does Defendant cite to any authority holding that a Court's approving and adopting a settlement agreement dispenses with the Court's power to enforce such an agreement independent of holding a defendant in contempt.[1] Accordingly, the Court agrees with Magistrate Judge Snow; unlike contempt proceedings, Plaintiffs may enforce the Agreement by proof of violation by a preponderance of the evidence. *See S. Beach Suncare*, 1999 WL 35058, at *11.

### B. Plaintiffs' Objections

Plaintiffs object to four specific findings in the Report that they claim are unrelated to the Magistrate's evaluation of live testimony. The Court will address each objection in turn.

*1. Testing and Medically Isolating Symptomatic Detainees*

The Agreement obligates Defendant to "house symptomatic persons in medical isolation in individual cells in separate housing units," and test those "who display symptoms" and detainees "who are exposed to a person who has tested positive for COVID-19." [DE 103-1] at ¶¶ 39, 43. All testing must comply with CDC guidance pursuant to Paragraph 44 of the Agreement. *Id.* at ¶ 44.

> With respect to testing symptomatic detainees, Magistrate Judge Snow found:
>
> All of the evidence put forth by Plaintiffs serves to establish only delayed testing and disputes over whether a detainee has shown sufficient COVID-19 "symptoms" to warrant a test. The undersigned recognizes that there may be a practical disparity between a medically defined symptomatic person and a detainee's nonmedical understanding of what constitutes a symptomatic person. Without a clear definition in the Settlement Agreement of what it means to "display

---

[1] Indeed, the language of the Court's May 13, 2021 Order Certifying Settlement Class and Approving Class Settlement requires otherwise. *See* [DE 112] at 2–3 ("The Court shall retain jurisdiction over this action for the purpose of enforcing the Settlement Agreement and all other Orders in this action.").

6

> symptoms" for the purpose of warranting a test, the undersigned finds that Plaintiffs have not shown by a preponderance of the evidence that Defendant failed to comply with testing symptomatic and exposed detainees.

[DE 166] at 15. Magistrate Judge Snow made similar findings with respect to medically isolating symptomatic detainees, finding that the lack of "a clear definition of what it means to be a 'symptomatic person' sufficient to warrant medical isolation" under the Agreement warrants a denial of Plaintiff's request. *Id.* at 21. Plaintiffs object on grounds that these findings overlooked the description of COVID-19 symptoms in the Agreement, CDC guidance incorporated in the Agreement by reference, and the uncontested evidence Plaintiffs proffered at the hearing.

Upon review of the parties' filings, including the Agreement and CDC guidance, and arguments by both sides, the Court sustains Plaintiffs' Objections the extent that the Magistrate's analysis did not consider CDC guidance incorporated into the Agreement by reference. According to CDC guidance, symptoms of COVID-19 include but are not limited to "cough, shortness of breath or difficulty breathing, fever, chills, muscle pain, sore throat, and new loss or taste of smell." [DE 154-3] at 29. Therefore, while Magistrate Judge Snow is correct "that there may be a practical disparity between a medically defined symptomatic person and a detainee's nonmedical understanding of what constitutes a symptomatic person," there is an objective way to measure what constitutes a symptomatic person for purposes of testing and medically isolating pursuant to the Agreement's terms. [DE 166] at 15. This can be accomplished through temperature checks, identification of symptoms by medical staff, or substantially similar means.

Nevertheless, the Court agrees with Magistrate Judge Snow's conclusion that Plaintiffs have not shown by a preponderance of the evidence that Defendant failed to comply with testing and medically isolating symptomatic detainees. At the October 21, 2021 hearing, Plaintiffs

proffered the testimony of several detainees regarding the subjective symptoms they witnessed and experienced, including coughing, sweating, chills, and loss of taste and smell. *See, e.g.*, [DE 163] at 106:25-108:15, 147:17-149:20, 155:20-159:12. In light of the definition of COVID-19 symptoms identified by CDC guidance incorporated into the Agreement, and the subjective evidence Plaintiffs proffered at the hearing, the Court overrules Plaintiffs' Objections as to the Magistrate's ultimate conclusion.

   2. *Educating Detainees*

The Agreement requires Defendant to "[i]nstruct prisoners on the latest CDC and other public health guidance on COVID-19, including best practices about preventing COVID-19 infection and transmission." [DE 103-1] at ¶ 61. As Magistrate Judge Snow noted, current CDC guidance "unambiguously instructs that the best practice to prevent COVID-19 infection and transmission is to receive one of the three FDA-authorized COVID-19 vaccines." [DE 166] at 24–25. Ultimately, Magistrate Judge Snow found Defendant complied with Paragraph 61 of the Agreement by: (1) posting educational materials on COVID-19 prevention and vaccination throughout the Jail, (2) making at least three loudspeaker announcements per day regarding the availability of vaccinations, and (3) educating in-person on vaccination through its nurses and healthcare professionals during chronic care visits and routine contact. *Id.* at 25. Magistrate Judge Snow also noted that Plaintiffs conceded that Defendant has taken steps to encourage vaccination. *Id.*

Plaintiffs object to the first finding on grounds that these materials were not delivered in such a way to reach detainees. As to the second finding regarding loudspeaker announcements, Plaintiffs contend that such announcements are not education as they merely advise about the availability of vaccines rather than information about the vaccines, such as their efficacy and

safety. As to the third finding regarding in-person education, Plaintiffs dispute this finding on grounds that it is based on the conclusory and inadmissible hearsay declaration of Acting Director Darren Sieger.

Having carefully considered Plaintiffs' Objections and Defendant's Response thereto, and having reviewed the arguments, and evidence presented, the Court overrules the Objections. The Court agrees with the analysis and conclusions regarding educating detainees in Magistrate Judge Snow's Report and finds that Plaintiffs have failed to meet their burden with respect to Paragraph 61 of the Agreement.

    3. *Reporting Requirements and Appointment of an Independent Monitor*

Plaintiffs also disagree with Magistrate Judge Snow's finding that the monthly compliance reporting and independent monitor sought by Plaintiffs is not warranted. In their Objections, Plaintiffs argue "the lengthy and resource-intensive nature of Plaintiffs' monitoring shows precisely why such monitoring alone is insufficient," that compliance with the Agreement is Defendant's responsibility, and that the Agreement's provision regarding Plaintiffs' monitoring should merely be a "confirmatory backstop." [DE 168] at 17. Plaintiffs further argue that appointment of a monitor and regular compliance reporting are tools commonly utilized in jail and prison litigation. [DE 168] at 18–19; *see, e.g., United States v. Miami-Dade Cnty.*, No. 1:13-cv-21570, [DE 5-2] at 30–33.

Upon careful consideration, the Court overrules the Objections. The Court agrees with Magistrate Judge Snow that appointing a monitor and requiring more stringent reporting requirements is not appropriate at this time. Magistrate Judge Snow correctly observed that "Plaintiffs concede that they 'ask only for a detailed enforcement order' at this time, and not an order holding Defendant in civil contempt" but nevertheless

"analogize to contempt cases to substantiate their argument that sanctions such as appointing a monitor and requiring more stringent reporting is appropriate in the instant case." [DE 166] at 25–26. In the absence of authority permitting this Court to impose sanctions through a motion to enforce a settlement agreement, the Court will not impose such sanctions at this time. *See, e.g., Mercer*, 908 F.2d at 769 (finding that a district court abused its discretion when it imposed sanctions without making a finding of contempt).

   4. *Modification*

Finally, Plaintiffs object to the Magistrate's finding that Plaintiffs' request for modification of the Consent Decree be denied. The Eleventh Circuit has determined that the district court may modify a consent decree if the movant shows that: (1) there has been "a significant change either in factual conditions or in law"; and (2) "the proposed modification is suitably tailored to the changed circumstances." *Sierra Club v. Meiburg*, 296 F.3d 1021, 1033 (11th Cir. 2002) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 391 (1992)). "One way a plaintiff *may* be able to establish a change in circumstances justifying modification of a consent decree is by demonstrating that the consent decree has failed to achieve its purpose." *F.T.C. v. Garden of Life, Inc.*, No. 06-80226-CIV, 2012 WL 1898607, at *3 (S.D. Fla. May 25, 2012) (emphasis in original). The Eleventh Circuit has cautioned, however, that "consent decrees generally do not have overarching purposes" and "cannot be interpreted as requiring whatever might be necessary and appropriate" to achieve a more general, overarching purpose. *Sierra Club,* 296 F.3d at 1031–32.

Importantly, the Eleventh Circuit has warned that "[a] party seeking to modify a consent decree has a high hurdle to clear and the wind in its face." *Id.* at 1034. Indeed, modifications to consent decrees are rarely granted "because consent decrees are normally compromises between

parties with opposing positions in which each party gives up their rights to litigation and to prove their position." *Id.* at 1032.

Plaintiffs request modification of the Consent Decree in light of changed factual circumstances, namely, the advent, approval, and widespread availability of COVID-19 vaccines. In the Report, Magistrate Judge Snow recommends Plaintiffs' request for modification be denied given "the high burden of proof required to support modification, the availability of vaccines prior to approval of the Agreement, Defendant's voluntary steps to address changed circumstances, and the Eleventh Circuit's disfavor for overarching contractual 'purposes[.]'" [DE 166] at 29. The Court agrees with Magistrate Judge Snow's analysis and conclusions.

Plaintiffs primarily object to the Magistrate's finding on grounds that it was based on the mistaken premise that Plaintiffs could have re-negotiated the Agreement after it was executed in November 2020. After execution, Plaintiffs contend, they lacked the power to negotiate the Agreement's terms when the vaccines later became available. The Court disagrees. The parties were more than capable of re-negotiating and amending the Agreement's terms before the Court's fairness hearing and Order Certifying Settlement Class and Approving Class Settlement in May 2021.[2] That the parties elected not to do so does not surmount the high burden of demonstrating a significant change in factual circumstances to warrant modification. Therefore, the Court overrules the Objections.

As a final note, and particularly in the light of the emergence of Omicron variant[3], the Court reiterates Magistrate Judge Snow's observation that "it is in the parties' interests to

---

[2] At the Court's fairness hearing in May 2021, the Court questioned whether the Settlement Agreement contained provisions that considered vaccinations and, if not, why those provisions were absent. Plaintiffs' counsel explained that the Agreement was executed just a few weeks prior to approval and release of the vaccines, but that Plaintiffs' counsel had been in communication with BSO about vaccinations. *See* [DE 126] at 7:6-19.

[3] The CDC advises that "breakthrough infections in people who are fully vaccinated are likely to occur" but that, importantly, "vaccines have remained effective at preventing severe illness, hospitalizations, and death." *Omicron*

increase the vaccination rate at Defendant's facilities, both to ensure the safety of detainees and staff, and to lower the burden on Defendant." [DE 166] at 29.

IV. **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Objections [DE 167] are **OVERRULED.**

2. Plaintiffs' Objections [DE 168] are **SUSTAINED IN PART**.

3. The Report [DE 166] is hereby **APPROVED IN PART**.

4. Plaintiffs' Motion for Enforcement and Modification [DE 130] is **GRANTED IN PART** as follows:

    a. Defendant shall, in accordance with CDC Guidance, conduct a COVID-19 test on all individuals at intake;

    b. Defendant shall test for COVID-19 all detainees being released or otherwise leaving the Jail, such as to attend court appearances. Defendant shall utilize rapid tests to ensure that the time for receiving results will not delay the detainee's exit from the Jail;

    c. Defendant shall, in accordance with CDC Guidance, ensure that individuals in quarantine units are tested for COVID-19 every 3-7 days until testing identifies no new cases in the quarantine unit for fourteen (14) days after the most recent positive result;

    d. Defendant shall conduct temperature and COVID-19 symptom checks prior to all transfers of detainees to different facilities;

---

*Variant: What You Need to Know*, CTRS FOR DISEASE CONTROL AND PREVENTION (updated Dec. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

   e. Defendant shall maintain a list of medically vulnerable detainees and conduct COVID-19 symptom screening and temperature checks of such detainees;

   f. Defendant shall track the housing location of medically vulnerable detainees; and

   g. Defendant shall ensure that detainees possess two face coverings in usable condition at all times.

5. Plaintiffs' Motion for Enforcement and Modification [DE 130] is **DENIED IN PART** as follows:

   a. No action by the Defendant is needed with regard to symptom screening detained persons re-entering jail, testing symptomatic and exposed detainees, screening staff, separating quarantine and cohort units, contact tracing, cohorting upon admission, re-testing and monitoring during cohorting, medical isolation of symptomatic detainees, social distancing, personal protective equipment, and educational information.

   b. No enhanced reporting requirements and appointment of an independent monitor to oversee compliance with the Agreement is required.

   c. No modification of the Agreement is necessary.

It is further **ORDERED AND ADJUDGED** that the Clerk shall mail a copy of this order to Kenneth A. Frank and Peter Davis at the addresses listed below.[4]

---

[4] On January 24, 2022, the Court received a letter from Kenneth A. Frank, an inmate at the Conte Correctional Facility, listing a number of grievances related to overcrowding, cleanliness, and treatment endured by himself and other inmates at the Conte Correctional Facility. *See* [DE 171]. Mr. Frank requests the Court "enter an injunction or order to show cause requiring immediate discontinuance of double bunking, reduction of population, and strict adherence to sanitary polices, inter alia." *Id.* On January 28, 2022, the Court received a letter from Peter Davis, an inmate at the Paul Rein Detention Facility, requesting the Court deny Defendant's request for an extension of time and "grant the T.R.O. to stop further irreparable harm being inflicted to the Plaintiff." *See* [DE 172]. Kenneth A.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 31st day of January, 2022.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of record

Kenneth A. Frank, #231700416
Conte Correctional Facility
P.O. Box 407016
Fort Lauderdale, FL 33340

Peter Davis, #381701573
Paul Rein Facility
P.O. Box 407003
Fort Lauderdale, FL 33340

---

Frank and Peter Davis are both housed at Broward County corrections facilities and are therefore class members represented by Class Counsel in this matter. *See* [DE 103-1] at ¶¶ 5, 7, 10. The Court does not allow hybrid representation. Class members should report any instances of noncompliance with the Settlement Agreement to Class Counsel, who may then seek appropriate relief from the Court. **The Court will not address further letters from class members requesting relief from the Court unless filed by Class Counsel.**